**Tommy MCCRAY, Plaintiff,**

v.

**R. WILLIAMS and First State Medical System, Defendants.**

**No. CIV.04–173–SLR.**

United States District Court,
D. Delaware.

Feb. 15, 2005.

Tommy McCray, Howard Young Correctional Facility, SBI # 164599, Wilmington, DE, Plaintiff appearing Pro Se.

Richard W. Hubbard, Deputy Attorney General, Delaware Department of Justice, Wilmington, DE, Counsel for Defendant Williams.

Daniel L. McKenty, Esquire, McCullough & McKenty, P.A., Wilmington, DE, Counsel for Defendant First State Medical System.

## MEMORANDUM OPINION

ROBINSON, Chief Judge.

### I. INTRODUCTION

Plaintiff Tommy McCray, appearing *pro se*, brought this civil rights action pursuant

to 42 U.S.C. § 1983, alleging that "deliberate indifference" on the part of the defendants led to an "excessive risk" to his health. (D.I.2) Named as defendants in the complaint are Warden Raphael Williams of the Multi Purpose Criminal Justice Facility in Wilmington, Delaware ("Gander Hill"), and First State Medical System. The court has jurisdiction over plaintiff's suit by virtue of 28 U.S.C. § 1331. Procedurally, the court is faced with a motion to dismiss from defendant Williams. (D.I.10) For the reasons that follow, defendant's motion to dismiss is granted.

## II. BACKGROUND

Plaintiff is currently incarcerated in the Delaware Correctional Center ("DCC") in Smyrna, Delaware. At the time of the incident described in plaintiff's complaint, however, plaintiff was housed at Gander Hill. (D.I.2, 18) On October 3, 2003, plaintiff requested an intravenous medical procedure which the nurse at Gander Hill was unable to perform. Consequently, plaintiff was transferred from Gander Hill to the DCC in order to have the procedure performed. (D.I.2) Although the commute from Gander Hill to the DCC took about two hours, plaintiff does not allege an injury occurred as a result of the commute. (*Id.*) Rather, plaintiff asserts that he "could have went [sic] into diabetic shock or diabetic coma" as a result of the delay in transferring him to the DCC for treatment. (*Id.*) The heart of plaintiff's complaint is that he should have been taken to a local hospital rather than transferred to the infirmary at the DCC to perform the procedure. (*Id.*) Defendant Williams contends that plaintiff's complaint should be dismissed because plaintiff has failed to exhaust all administrative remedies and because plaintiff's complaint fails to state a claim upon which relief can be granted. (*Id.*) Plaintiff subsequently filed a response to defendant Williams' motion to dismiss. (D.I.14)

## III. STANDARD OF REVIEW

In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir.1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Where the plaintiff is a pro se litigant, the court has an obligation to construe the complaint liberally. *See Haines v. Kerner,* 404 U.S. 519, 520–521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Gibbs v. Roman,* 116 F.3d 83, 86 n. 6 (3d Cir.1997); *Urrutia v. Harrisburg County Police Dep't,* 91 F.3d 451, 456 (3d Cir.1996). The moving party has the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991).

## IV. DISCUSSION

Although defendant Williams first asserts that plaintiff has failed to allege any actual injury in fact (D.I.10), the second argument made by defendant raises the possibility that plaintiff is improperly before this court. Therefore, the court will first address whether plaintiff failed to exhaust any administrative remedies available prior to beginning any inquiry into the sufficiency of plaintiff's complaint.

## A. Failure to Exhaust Administrative Remedies

■ Defendant Williams argues that plaintiff did not exhaust his administrative remedies prior to filing this action pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"). The PLRA provides that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as available are exhausted.

Section § 3626(g) of Title 18 of the United States Code defines "prison conditions" as "...the effects of actions by government officials on the lives of persons confined in prison...." Actions under this clause relate to "the environment in which prisoners live, the physical conditions of that environment, and the nature of the services provided therein." *Booth v. Churner, C.O.,* 206 F.3d 289, 291 (3rd Cir.2000).

Taking all allegations in plaintiff's complaint as true, the action complained of is a "prison condition." It cannot be reasonably argued that transferring an inmate for purposes of medical treatment does not relate to "the nature of the services provided." Therefore, plaintiff is required to exhaust administrative remedies, if any exist, before filing a complaint in federal court.

■ In the complaint, plaintiff acknowledges that a prisoner grievance procedure existed at Gander Hill at the time of the alleged wrongdoing. (D.I.2) The plaintiff, however, acknowledges on the very next line of his complaint that he failed to file a grievance pursuant to the procedures set forth by Gander Hill prior to filing this

suit. *Id.* In defense of his failure to follow the grievance procedures, plaintiff asserts that "it was and [sic] emergency" and that his blood-sugar level was "out of control." (D.I.14) Plaintiff's defense of his failure to file a grievance is unavailing as any filing of a grievance would naturally occur after the complained of incident.

■ In addition to openly admitting that he did not exhaust the administrative remedies available to him at Gander Hill, plaintiff's status as a *pro se* litigant fails to provide an exception to the requirement that prisoners must exhaust all administrative remedies prior to filing suit in federal court. Although a prisoner's *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers," *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), it cannot follow that a *pro se* litigant may circumvent this exhaustion requirement altogether. By applying § 1997e(a) without exception,[1] the policies underlying the exhaustion requirements are promoted, that is, the agency involved is given the opportunity to discover and correct its own mistakes while conserving judicial resources. *Nyhuis v. Reno,* 204 F.3d 65, 75 (3rd Cir.2000).

■ Although plaintiff seeks monetary damages, a form of relief the prison system cannot provide, the Third Circuit does not allow for a futility exception to the PLRA's exhaustion requirement. *Id.* at 71. In this case, plaintiff has failed to adequately explain why he was unable to file a grievance and yet be able to file this lawsuit. It is clear that plaintiff has failed to exhaust the administrative remedies available to him in Gander Hill. Accordingly, his complaint must be dismissed.

---

1. The court has found no caselaw supporting the proposition that exceptions should be made based upon the nature of the complaint.

## B. Failure to State a Claim

Even if plaintiff were found to have satisfied the administrative remedy exhaustion requirement, plaintiff's claim is fatally flawed for the additional reason that plaintiff's claim failed to allege an actual injury in fact. Defendant correctly notes in his motion that actual injury is a prerequisite to any claim under § 1983. *See Lewis v. Casey*, 518 U.S. 343, 349–51, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)(holding that merely being subject to a governmental institution that was not organized or managed properly does not rise to a constitutional violation). In the present case, plaintiff does not allege that he suffered any actual injury from the attempted intravenous procedure or the subsequent transfer to the DCC. Rather, plaintiff merely indicates that the entire episode posed an "excessive risk to [his] health." (D.I.2) At most, this complaint reflects concern over a potential harm that never occurred.

Moreover, even if the court were to infer from the plaintiff's complaint that the plaintiff alleged an actual injury from the medical treatment received under the supervision of Gander Hill's medical staff, the plaintiff's § 1983 complaint still falls short of surviving defendant's motion to dismiss. To state a violation of the Eighth Amendment right to adequate medical care, plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *accord White v. Napoleon*, 897 F.2d 103, 109 (3d Cir.1990). Plaintiff must demonstrate: (1) that he had a serious medical need; and (2) that the defendant was aware of this need and was deliberately indifferent to it. *See West v. Keve*, 571 F.2d 158, 161 (3d Cir.1978); *see also Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir.1987). Either actual intent or reck-lessness will afford an adequate basis to show deliberate indifference. *See Estelle*, 429 U.S. at 105, 97 S.Ct. 285.

The seriousness of a medical need may be demonstrated by showing that the need is " 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.' " *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987) (quoting *Pace v. Fauver*, 479 F.Supp. 456, 458 (D.N.J.1979)). Moreover, "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Id.*

As to the second requirement, an official's denial of an inmate's reasonable requests for medical treatment constitutes deliberate indifference if such denial subjects the inmate to undue suffering or a threat of tangible residual injury. *Id.* at 346. Deliberate indifference may also be present if necessary medical treatment is delayed for non-medical reasons, or if an official bars access to a physician capable of evaluating a prisoner's need for medical treatment. *Id.* at 347. An official's conduct, however, does not constitute deliberate indifference unless it is accompanied by the requisite mental state. Specifically, "the official [must] know ... of and disregard ... an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). While a plaintiff must allege that the official was subjectively aware of the requisite risk, he may demonstrate that the official had knowledge of the risk through circumstantial evidence and "a fact finder may conclude that a[n] ...

official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842, 114 S.Ct. 1970.

 The law is clear that mere medical malpractice is insufficient to present a constitutional violation. *See Estelle,* 429 U.S. at 106, 97 S.Ct. 285; *Durmer v. O'Carroll,* 991 F.2d 64, 67 (3d Cir.1993). Prison authorities are given extensive liberty in the treatment of prisoners. *See Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979); *see also White,* 897 F.2d at 110 ("[C]ertainly no claim is stated when a *doctor* disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness."). The proper forum for a medical malpractice claim is in state court under the applicable tort law. *See Estelle,* 429 U.S. at 107, 97 S.Ct. 285.

Plaintiff admits in his complaint that the medical personnel at Gander Hill attempted to introduce fluids intravenously to regulate plaintiff's blood sugar levels. (D.I.2, 18) Although the nurse at Gander Hill was unable to successfully perform the procedure, plaintiff admits that the medical staff transferred him to the DCC in order to ensure that the procedure was performed correctly. (D.I.2, 18) Although other hospitals may have treated plaintiff somewhat differently, the record does not indicate any form of deliberate indifference on behalf of the defendants and does not rise to a constitutional violation. "[C]ourts will not 'second-guess the propriety or adequacy of a particular course of treatment [which] remains a question of sound professional judgment.'" *Boring,* 833 F.2d at 473 (citing *Pierce,* 612 F.2d at 762). The plaintiff may disagree with the medical treatment which he is receiving, however, this does not support a § 1983 claim. "Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim." *Norris v. Frame,* 585 F.2d 1183, 1186 (3d Cir.1978) (citing *Roach v. Kligman,* 412 F.Supp. 521 (E.D.Pa.1976)).

At best plaintiff's complaint would only reveal a disagreement with the medical staff at Gander Hill over the location and proper means of treating plaintiff's condition and not a deliberate indifference to a medical need. It is clear from the record that the plaintiff cannot satisfy the first prong of the *Estelle* test. *See Boring,* 833 F.2d at 473. Accordingly, because plaintiff failed to state a claim upon which relief can be granted, defendant's motion to dismiss must be granted.

## V. Conclusion

For the reasons set forth above, the court grants defendant's motion to dismiss (D.I.10). An appropriate order shall issue.